# The Mutual Accident Association of the North-WEST

### v.

### Emma A. Tuggle.

*Life Insurance—Mutual Benefit Association—Certificate of Membership —Action on—Conditions—Accident—Overdose of Poison—Practice Act— Sec. 24.*

1. It should not be assumed because of the failure of a court to discuss a certain clause in an insurance policy, the basis of a given action, that the same was overlooked.

2. A death from an overdose of laudanum, taken by mistake, is within a clause in a policy of insurance limiting its liability to "injuries received by or through external, violent and accidental means."

3. A defendant seeking to raise a point touching a declaration, which' might be obviated by amendment, should be required to specifically state it and should not demur generally.

4. This court will not reverse a case on a question which the trial court did not decide, and which, had it been presented thereto, might have been obviated.

## [Opinion filed January 24, 1891.]

Appeal from the Circuit Court of McDonough County; the Hon. C. J. Scofield, Judge, presiding.

Messrs. Albert H. Veeder and Mason B. Loomis, for appellant.

Messrs. Harris & Mickey and Prentiss & Baily, for appellee.

We submit that the accidental swallowing of an excessive quantity of a deadly drug which produced death, as charged in the third count of the plaintiff's declaration, was a bodily injury received by or through external, violent and accidental means, within the meaning of this policy. Paul v. Travelers Ins. Co., 45 Hun, 313; Paul v. Travelers Ins. Co., 121 N. Y. 472; 20 N. E. Rep. 347; McGlinchey v. Fid. & Cas. Co., 80

Me. 251; 14 Atl. R. 13; U. S. Mut. Acc. Ass'n v. Newman, 3 S. E. Rep. 809; Trew v. Railway Co., 7 Jur. (N. S.) 878; Reynolds v. Ins. Co., Law T. (N. S.) 820; Winspear v. Acc. Ins. Co., 43 L. J. Rep. (N. S.), 459; Martin v. Travelers Ins. Co., 1 Foster & Finl. 505.

That fact, however, is expressly alleged in the declaration and admitted by the demurrer in this case.

The provision in the policy, that benefits thereunder should not extend to any bodily injury, of which there should be no external or visible sign, applies only to injuries not causing death, for which the policy provides for the payment of weekly benefits; and that the dead body is external and visible sign enough in case of death. Mallory v. Travelers Ins. Co., 47 N. Y. 52; Paul v. Travelers Ins. Co., 112 N. Y. 472; McGlinchey v. Fidelity & Casualty Co., 80 Me. 251.

In Paul v. Travelers Ins. Co., 112 N. Y. 472 (20 N. E. Rep. 347), the policy was similar to that in the case at bar, in indemnifying against injuries caused by external, violent and accidental means. The insured died from inhaling illuminating gas. He was found dead in his room, the gas being turned on and the room being filled with gas, and he lay on his bed like a man asleep, without any outward indications that he was dead, and without any external or visible signs of injury upon his body. The company was held liable; and see Trew v. Railway Co., 7 Jur. (N. S.) 878; Reynolds v. Insurance Co., 22 Law T. (N. S.) 820; McGlinchey v. Casualty Co., 14 Atl. Rep. 13.

The case of Hill v. Insurance Co., 22 Hun, 187, cited by appellant, was that of a physician's death from drinking by mistake water from a goblet in which was some poison. It was held by a divided court that the injury was not effected through external and violent means within the meaning of similar provisions of a policy. We can not approve of the reasoning of the court and agree with the general term opinion in this case, that the rule there laid down was too strict. In McGlinchey v. Casualty Co., 80 Me. 251, 14 At. Rep. 13, the Supreme Court of Maine held similar views of construction of an accident policy, and rested among other authorities upon the general term opinion in this case.

It has been held that an insane man who takes his own life, dies from an injury produced by external, accidental and violent means.   Insurance Co. v. Crandall, 120 U. S. 527; 7 Supreme Court Reports, 885.

The same result follows when death ensues from accidental drowning.   Trew v. Insurance Co., 6 Hurl. & N. 845; Winspear v. Insurance Co., 6 Q. B. Div. 42.

Accidentally inhaling coal gas, causing death, entitles a recovery upon a policy like the present.   Paul v. Insurance Co., 45 Hun, 313.

A death from blood poisoning, produced by virus communicated to the hand by a fly, comes within the terms of such a policy.   Bacon v. Association, 44 Hun, 599.

The latter case has been criticized upon the point whether the means in that instance were violent or not.

In Insurance Co. v. Burroughs, 69 Pa. St. 43, the court says: "If the injury be accidental, and the result is death, what matters it whether the injury is caused by a blow from a pitchfork, or a strain in handling it?"   In these cases it was held that the true cause of the death came from the outside—were external means.   Upon principle, we think, the same decision must be reached here.

In the cases of Trew v. Assurance Co., 5 Hurlst. & N. 211, and on appeal 6 Hurlst. & N. 839, 7 Jur. (N. S.) 878 ; Reynolds v. Accidental Ins. Co., 22 L. T. (N. S.) 820, and Winspear v. Accident Ins. Co., 42 L. T. (N. S.) 90; 43 L. J. Rep. (N. S.) 459, affirmed 6 Q. B. D. 42, it was held that death from drowning was caused by external and violent means within the meaning of an accident policy.   In the Trew case, which is the leading case, and is followed by the others, it was argued for the defendant that " whereas, from the action of the water there is no external injury, death by the action of the water is not within the meaning of the policy." To which the court reply:   "That argument, if carried to its extreme length, would apply to every case where death was immediate.   If a man fell from the top of a house or overboard from a ship, and was killed, or if a man was suffocated by the smoke of a house on fire, such cases would

be excluded from the policy, and the effect would be that policies of this kind, in many cases where death resulted from accident, would afford no protection whatever to the assured. We ought not to give these policies a construction which will defeat the protection of the assured in a large number of cases." Hurlst. & N. 843.

In the late case of U. S. Mut. Acc. Ass'n v. Newman, in the Court of Appeals of Virginia, 3 S. E. Rep. 809, the insured died from inhaling coal gas. He was found dead in his bed and the room was full of coal gas. But the court sustained a judgment against the insurance company. There can be no question, we submit, under these authorities, that the injuries which occasioned the death of Charles W. Tuggle "were received by or through" external and violent means within the meaning of the policy. They establish as the proper construction of these words in the policy, as stated by the Court of Appeals in Paul v. Travelers Ins. Co., that "the fact that a death is the result of an accident, or is unnatural, imports an external and violent agency as a cause." Gas, water, the running away of a horse, from which by reason of fright or otherwise, death results, or a deadly drug, are equally external and violent means.

WALL, J.    This was an action of assumpsit upon a certificate of membership in the defendant company.

A demurrer to the declaration was overruled and the defendant not answering further, judgment was rendered for $5,000.

The first point made is, that by the terms of the certificate there was not an absolute promise to pay $5,000, or any definite amount, but to pay the sum of $2 for each member of division A of the association, which sum was not to exceed $5,000. The demurrer was general, no specific objection being pointed out. The declaration set out the certificate *in hæc verba* and averred the death of the assured, etc., and alleged that by reason of the premises, the plaintiff was entitled to receive said sum of $5,000, but did not allege that division A contained any particular number of members.

The objection was one that might have been obviated by amendment.

Whether such a defect might have been reached by special demurrer only at the common law, we are of opinion that under the operation of Sec. 24 of the Practice Act, and in analogy to the liberal policy there indicated, it could not be reached by general demurrer, and that a defendant seeking to raise a point so easily met by amendment should be required to specifically state it. That provision of the Practice Act has worked a radical change in our procedure and has enlarged the scope of matters which should be specially set out as ground of demurrer.

It is said in the brief of appellee that upon the argument of the demurrer in the Circuit Court no allusion was made to this objection and that it is presented in this court for the first time. Counsel for appellant do not controvert this statement and we assume that they can not.

While we must be guided by the record and not by assertions of fact in the briefs, we are impressed with the injustice of considering a point possibly not urged in the Circuit Court which does not go to the merits of the cause of action but only to the amount claimed, and which, had it been important as affecting the sum for which defendant was liable, could have been so readily obviated. The damages were assessed by a jury, counsel for defendant being present making some objections to the admission of evidence and cross-examining the plaintiff, who appeared as a witness. Nowhere in the proceedings do we find any suggestion in this respect. We think it can not be considered now.

As was said in I. & St. L. R. R. Co. v. Estes, 96 Ill. 474, " a case ought not to be reversed in this court on a question which the Circuit Court did not in fact decide, and which, if presented to that court, might at once have been obviated."

See also as analogous, Tomlinson v. Earnshaw, 112 Ill. 311, and Utter v. Jaffray, 112 Ill. 470.

The main controversy in the case and upon which the rights of the parties really depend is, whether the facts alleged as to the manner whereby the assured lost his life, fix

liability upon the defendant. It is averred in substance that by accident the assured took an overdose, or excessive quantity of laudanum which caused his death. The certificate limits liability to "injuries received by or through external, violent and accidental means," and it is contended on behalf of the company that such a case is not made by the allegation of accidentally taking poison.

In the case of Healey against this company, 133 Ill. 556, the Supreme Court held that death so caused was within the spirit of the policy and that the company was liable, precisely the same provision being under consideration.

Counsel urge, however, that the court overlooked another clause in the policy exempting the company from liability in case of "the taking of poison in any manner." It is true this clause is not discussed in the opinion, but we are not to assume that it was overlooked or that the proper construction of it should modify the views expressed.

We feel bound to follow the ruling of the Supreme Court. The judgment will be affirmed.

*Judgment affirmed.*